## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| LUXOTTICA RETAIL NORTH AMERICA INC.   : | |
| d/b/a PEARLE VISION   : | Case No. 1:11-cv-278 |
| 4000 Luxottica Place   : | |
| Mason, Ohio 45040   : | Judge _____ |
|   : | |
| Plaintiff,   : | |
|   : | **VERIFIED COMPLAINT FOR** |
| vs.   : | **INJUNCTIVE RELIEF AND** |
|   : | **DAMAGES** |
| VISION PLUS, INC.   : | |
| Golden Triangle Mall S/C   : | |
| 2201 I-35 E. South   : | |
| Denton, Texas 76205   : | |
|   : | |
| and   : | |
|   : | |
| ROBERT BROOKS   : | |
| c/o Vision Plus, Inc.   : | |
| 2201 I-35 E. South   : | |
| Denton, Texas 76205   : | |
|   : | |
| Defendants.   : | |
|   : | |

For its Verified Complaint against Defendants Vision Plus, Inc. ("Vision Plus") and Robert Brooks ("Brooks") (together, "Defendants"), Plaintiff Luxottica Retail North America Inc. d/b/a PEARLE VISION®, successor-in-interest to Pearle Franchise Corporation ("PFC") and Pearle Vision, Inc. ("PVI") (collectively, "Pearle Vision") states as follows:

### Introduction

1.     This is an action to enjoin Defendants from unlawfully using and displaying Pearle Vision's valuable trademarks and service marks in connection with Defendants' operation of a retail optical store located in Denton, Texas (Pearle Vision Store #8291), following the termination of their franchise agreement with Pearle Vision, as well as for Lanham Act damages.

Additionally, this is an action for money damages against Defendants for breaches of written agreements between Pearle Vision and Defendants.

## The Parties

2.    Plaintiff Pearle Vision is an Ohio corporation with its principal place of business in Mason, Ohio.  Pearle Vision is the successor-in-interest to both PFC and PVI.

3.    Upon information and belief, Defendant Vision Plus is a Texas corporation with its principal place of business in the State of Texas.

4.    Upon information and belief, Defendant Brooks is a citizen and resident of the State of Texas.

## Jurisdiction and Venue

5.    Pearle Vision operates and franchises distinctive optical retail stores throughout the United States.  Pearle Vision's franchise operations are conducted and supervised from its headquarters located in Mason, Ohio.

6.    The parties have carried on a continuous course of direct communications by mail and by telephone through Pearle Vision's headquarters in Mason, Ohio.

7.    The course of dealing between Pearle Vision and its franchisees, including Defendants, shows that decision-making authority is vested in Pearle Vision's headquarters in Mason, Ohio.

8.    Defendants negotiated with Pearle Vision for the acquisition of long-term franchise and other agreements with the knowledge that they would benefit from their affiliation with Pearle Vision.

2

9.     Defendants voluntarily entered into franchise relationships with Pearle Vision, which envisioned continuing and wide-reaching contacts with Pearle Vision in Ohio, including regulation of their franchised business from Pearle Vision's headquarters in Mason, Ohio.

10.    Defendants entered into franchise and other agreements with Pearle Vision, all of which Defendants executed and returned to Pearle Vision in Ohio.  The agreements required the payments of money and the performance of covenants to be payable and due in Ohio. Specifically, payments that became due under the agreements were electronically withdrawn from Defendants' accounts by Pearle Vision in Ohio.  The agreements also required notices from Defendants to Pearle Vision to be sent to Ohio.

11.    Defendants have purposefully availed themselves of the benefits and protection of Ohio law by entering into franchise and other agreements with Pearle Vision, which expressly provide that Ohio law will govern any disputes pertinent to such agreements, and which further provide that the U.S. District Court for the Southern District of Ohio, Western Division, will be the venue and exclusive proper forum in which to adjudicate any case or controversy arising under such agreements.

12.    This Court has subject matter jurisdiction over this action based upon:

      a.     28 U.S.C. § 1332, as the parties are citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs;

      b.     Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338(a), for the claims arising out of Defendants' violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and

    c.  28 U.S.C. § 1338(b) and the doctrine of supplemental jurisdiction, as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' common law unfair competition and Defendants' breaches of contract.

13. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391, as Defendants breached contracts that required payment in this judicial district (Mason, Ohio) and infringed on Pearle Vision's trademarks, which caused damages to Pearle Vision in this judicial district (Mason, Ohio).  The parties have also expressly agreed to adjudicate any and all cases or controversies arising under said contracts in this judicial district.

14. Defendants have agreed in writing that in any litigation to enforce the terms of the agreements between Pearle Vision and Defendants, Pearle Vision, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

15. Pearle Vision has engaged the undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between Pearle Vision and Defendants.

16. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## The Pearle Vision Marks

17. To identify the source, origin, and sponsorship of Pearle Vision's facilities, products, and services, Pearle Vision has extensively employed, caused to be advertised, and publicized throughout the United States certain distinctive symbols as trademarks and service marks (the "Pearle Vision Marks").

18.     Pearle Vision was the first to adopt and use the Pearle Vision Marks as trademarks and service marks, and all right, title, and interest to the Pearle Vision Marks and the design, decor, and image of Pearle Vision stores remain vested solely in Pearle Vision.

19.     Pearle Vision operates and franchises PEARLE VISION® Stores using the Pearle Vision Marks on signs, boards, posters, equipment, translights, and other items, and in advertising to the public through television, radio, and print media.

20.     Set forth below is an abbreviated listing of the Pearle Vision Marks registered in the United States Patent and Trademark Office:

| Trademark: | Record No. / Sub Case: | Status / Symbol: | Application No. / Date: | Registration No. / Date: |
|---|---|---|---|---|
| CLEARLY DIFFERENT | 65430-0506 | Pending 35, 44 | 77691913 16-Mar-2009 | |
| D.O.C. | 65430-0481/ | Registered 42 | 73216003 17-May-1979 | 1164148 4-Aug-1981 |
| DESIGN (Green Oval) | 65430-0013/ | Registered 42 | 73/330,057 28-Oct-1981 | 1257977 15-Nov-1983 |
| I HAVE SEEN | 65430-0489/ | Registered 35, 44 | 77243053 31-Jul-2007 | 3547686 16-Dec-2008 |
| NOBODY CARES FOR EYES BETTER THAN PEARLE | 65430-0025/ | Registered 42 | 75/386066 06-Nov-1997 | 2330661 21-Mar-2000 |
| PEARLE | 65430-0007/ | Registered 42 | 73/330,55 28-Sep-1981 | 1228785 22-Feb-1983 |
| PEARLE EXPRESS | 65430-0053/ | Registered 42 | 74/044,360 30-Mar-1990 | 1634558 05-Feb-1991 |
| PEARLE VISION | 65430-0023/ | Registered 35 | 75/421,424 22-Jan-1998 | 2,349,286 16-May-2000 |
| PEARLE VISION | 65430-0504/ | Registered 3, 9 | 77691919 16-Mar-2009 | 3689264 29-Sep-2009 |
| PEARLE VISION CENTER | 65430-0054/ | Registered 42 | 74/044,359 30-Mar-1990 | 1,633,854 05-Feb-1991 |
| PEARLE VISION CENTER & DESIGN | 65430-0014/ | Registered 42 | 73/099,967 15-Sep-1976 | 1,538,542 09-May-1989 |
| PEARLE VISION EXPRESS | 65430-0006/ | Registered 42 | 73/763,243 14-Nov-1988 | 1,622,998 13-Nov-1990 |

| | | | | |
|---|---|---|---|---|
| **PEARLE VISION EXPRESS & DESIGN** | 65430-0004/ | Registered 42 | 73/763,244 14-Nov-1988 | 1,603,022 19-Jun-1990 |
| **PEARLE VISION (GREEN LOGO)** | 65430-0499/ | Registered 35, 44 | 77380409 25-Jan-2008 | 3492222 26-Aug-2008 |
| **PEARLE VISION (WHITE LOGO)** | 65430-0498/ | Registered 35, 44 | 77380378 25-Jan-2008 | 3492219 26-Aug-2008 |
| **PEARLETHIN** | 65430-0485/ | Registered 9 | 77224719 09-Jul-2007 | 3606717 14-Apr-2009 |
| **PEARLEVIEWS** | 65430-0444/ | Registered 35 | 78788054 10-Jan-2006 | 3336740 13-Nov-2007 |
| **PICK MY PAIR** | 65430-0509 | Published 35, 44 | 77862435 02-Nov-2009 | |
| **THE DIFFERENCE IS CLEAR** | 65430-0508/ | Registered 42 | 74367856 15-Mar-1993 | 1803525 9-Nov-1993 |
| **WE WANT YOU TO SEE MORE** | 65430-0491/ | Registered 35, 44 | 77223499 6-Jul-2007 | 3544425 9-Dec-2008 |

21.    The registrations of the Pearle Vision Marks are currently in full force and effect, and Pearle Vision has given notice to the public of the registration of the Pearle Vision Marks as provided in 15 U.S.C. §1111.

22.    Pursuant to franchise agreements between Pearle Vision and its franchisees, Pearle Vision grants its franchisees a limited license and authority to use and display the Pearle Vision Marks, but only in such manner, and at such locations and times, as are expressly authorized by Pearle Vision.  Pursuant to these franchise agreements, a franchisee is not authorized to use the Pearle Vision Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all Pearle Vision franchise agreements, including Defendants' franchise agreement with Pearle Vision.

23.    Pearle Vision's products bearing the Pearle Vision Marks are offered and sold in interstate commerce.

24.     Pearle Vision and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting Pearle Vision's stores, services, and products.

25.     The substantial investment made in the Pearle Vision Marks has resulted in valuable goodwill for the Pearle Vision Marks and for the stores, products, and services bearing those marks. Pearle Vision products and services have met with popular approval and, as a result of Pearle Vision's extensive sales, advertising, promotion, and publicity, the public is familiar with the Pearle Vision Marks. The products and services associated with the Pearle Vision Marks are understood by the public to be produced, marketed, sponsored, supplied by, and/or affiliated with Pearle Vision.

**The Pearle Vision System**

26.     Pearle Vision has developed a comprehensive operating system for all Pearle Vision franchisees in order to protect the image of Pearle Vision and to ensure uniform, high quality standards. The detailed specifications and procedures of the "Pearle Vision System" are set forth in Pearle Vision's Franchise Manual (the "Manual").

27.     Every Pearle Vision franchisee is required by its franchise agreement to operate its franchise in accordance with the specifications and procedures contained in the Manual. The Manual sets forth in detail the mandatory Pearle Vision operating standards, specifications, and procedures. In addition to these strict quality, service, and other requirements, the Manual prescribes specified training procedures to ensure that these requirements are met. The Manual is a confidential Pearle Vision document which a franchisee is permitted to have only during the term of the franchise agreement.

28.    Pearle Vision offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel, as well as other regional and local instructional programs.  This enables Pearle Vision to safeguard the integrity of PEARLE VISION® Stores, the Pearle Vision System, and the Pearle Vision Marks.

29.    Integral to Pearle Vision's compliance and assistance program are periodic inspections and consultations undertaken by Pearle Vision personnel specially trained to observe and advise in all areas of operating procedure.  Pursuant to Pearle Vision's visitation process, action plans are issued after a store inspection is conducted.  These action plans serve as a training opportunity for the franchisee and as a quality assurance process for Pearle Vision to ensure that critical quality, service, and other standards are being met by the franchisee.  Each Pearle Vision franchise agreement confers upon Pearle Vision the right to enter the store premises to perform this vital function.

30.    As a result of its substantial expenditures of money and effort in developing and implementing the Pearle Vision System, Pearle Vision has established a high reputation and a positive image with the public as to the quality of products and services available at PEARLE VISION® Stores, which reputation and image have been, and continue to be, valuable assets of Pearle Vision.  Pearle Vision strives to maintain that reputation through its careful selection of authorized franchise owners, facilities, and locations and its careful supervision over the manner and quality of its services.

**Pearle Vision's Written Agreements with Defendants**

**The Franchise Agreement**

31.     Defendants owned and operated the PEARLE VISION® Store #8291 in Denton, Texas (the "Store"), using Pearle Vision's systems and names, including service marks and trademarks, in accordance with the terms and conditions of a Pearle Vision Franchise Agreement, effective February 1, 2009 (the "Franchise Agreement").

32.     The Store is located in the Golden Triangle Mall, 2201 I-35 E. South, Denton, Texas 76205.

33.     Under the terms of the Franchise Agreement, Defendants were obligated to make monthly payments to Pearle Vision for royalties, advertising fees, and merchandise in connection with their operation of the Store.

34.     Specifically, Paragraphs 8.2, 8.4(C), and 8.4(E) of the Franchise Agreement required Defendants to pay Pearle Vision a royalty of 7.0% of monthly Gross Revenues for the preceding calendar month in return for the use of the Pearle Vision System and the Pearle Vision Marks.

35.     Paragraphs 8.3 and 8.4(E) of the Franchise Agreement further required Defendants to pay Pearle Vision an advertising and marketing contribution of 8% of their monthly Gross Revenues for the preceding calendar month in return for advertising, marketing, brand management and merchandising expenditures made by Pearle Vision on behalf of the Pearle Vision System.

36.     Additionally, Paragraph 8.4(E) of the Franchise Agreement obligated Defendants to pay for all merchandise ordered and received from Pearle Vision.

**The Personal Guaranty**

37.     Pursuant to a Personal Guaranty dated February 1, 2009 (the "Guaranty"), Brooks unconditionally and irrevocably personally guaranteed each and every financial and performance obligation of Vision Plus under any agreement with Pearle Vision, including the Franchise Agreement.

**The Non-Compete Agreement**

38.     On January 8, 2009, Brooks executed a Confidentiality/Covenant Not to Compete Agreement (the "Non-Compete Agreement") in connection with the Franchise Agreement.

39.     Under both the Non-Compete Agreement and Paragraph 14.2 of the Franchise Agreement, Defendants agreed that during the term of the Franchise Agreement and for a period of one year following the termination or expiration thereof, they would not, either directly or indirectly, engage or participate in any other business offering or selling retail optical products and/or professional services within a radius of three miles from the Store.

**<u>Default and Termination</u>**

40.     Paragraph 18 of the Franchise Agreement contains provisions establishing the parties' rights and obligations in the event of a default by the franchisee under the Franchise Agreement.

41.     The relevant terms of Paragraph 18 provide that the franchisee's failure to comply with any provision of his or her franchise agreement constitutes a default.  It further provides that if an act of default occurs and the franchisee fails to cure the default after any required notice and within the applicable cure period, Pearle Vision may, at its option and without prejudice to any other rights or remedies provided thereunder or by law, terminate the franchise agreement.

42.    By letter dated November 2, 2010 (the "Notice of Default"), Pearle Vision notified Defendants that they were in default of their obligations under the Franchise Agreement by virtue of their failure to timely pay (a) royalties due under Paragraphs 8.2, 8.4(C), and 8.4(E) of the Franchise Agreement; (b) advertising fees due under Paragraphs 8.3 and 8.4(E) of the Franchise Agreement; and (c) for merchandise ordered and received pursuant to Paragraph 8.4(E) of the Franchise Agreement.

43.    Defendants failed to cure the defaults set forth in the Notice of Default.

44.    Consequently, by letter dated December 7, 2010 (the "Notice of Termination"), Pearle Vision notified Defendants that as a result of their failure to cure the outstanding defaults, the Franchise Agreement was effectively terminated as of the date of the letter.

### Post-Termination Use of Pearle Vision Marks

45.    Upon termination, Defendants were required to comply with the post-termination obligations contained in Paragraph 19 of the Franchise Agreement.

46.    Among other things, Paragraph 19 prohibited Defendants from promoting themselves as either a current or former Pearle Vision franchisee, and from using any of Pearle Vision's trade secrets, promotional materials, the Pearle Vision Marks, or any other mark confusingly similar.

47.    Paragraph 19 further required Defendants to make any changes or removals at the Store immediately upon Pearle Vision's request so as to clearly distinguish the Store from its former appearance and from any other  PEARLE VISION® Store, and also to transfer all telephone numbers and related directory listings to Pearle Vision.

48.    Moreover, pursuant to the Non-Compete Agreement and Paragraph 14.2 of the Franchise Agreement, Defendants were prohibited from operating or participating in a retail

optical store or optometric office within a radius of three miles from the Store for a period of one year following the termination of the Franchise Agreement.

49.    Defendants violated their post-termination obligations under the Franchise Agreement by failing to make the necessary changes or removals at the Store and by failing to transfer all telephone numbers and related directory listings to Pearle Vision.

50.    Defendants violated their post-termination obligations under the Franchise Agreement and the Non-Compete Agreement by continuing to operate the Store as a PEARLE VISION® Store and unlawfully using various Pearle Vision Marks in connection with their continued operation.

51.    As a result of Defendants' violations of their post-termination obligations, Pearle Vision issued Defendants a letter dated March 15, 2011, demanding that they immediately cease and desist from operating an unauthorized PEARLE VISION® Store and infringing upon the Pearle Vision Marks.

## Likelihood of Consumer Confusion and Deception

52.    Defendants have not tendered to Pearle Vision, or removed from the Store all Pearle Vision signs, logos, posters, containers, fixtures, stationary, and other items bearing the Pearle Vision Marks, name, symbols, or slogans, or which are otherwise identified with Pearle Vision and are located at the Store.

53.    Defendants' continued use and display of the Pearle Vision Marks or any items associated with the Pearle Vision name, symbols, or slogans at the Store is without Pearle Vision's license or consent, and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship.

54.     Upon seeing the familiar Pearle Vision Marks through Defendants' unauthorized use thereof, consumers will be deceived into concluding that the products and services sold at the Store are made or supplied by Pearle Vision, are prepared in the prescribed Pearle Vision manner and subject to Pearle Vision's supervision, are sponsored or endorsed by Pearle Vision, and bear the Pearle Vision Marks pursuant to Pearle Vision's authority and permission.  Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize the Store in reliance on the goodwill, reputation, and appeal of Pearle Vision.

55.     By reason of the foregoing, Pearle Vision has suffered damages, in an amount presently unknown yet substantial.  Pearle Vision no longer is the source or sponsor of the Store and does not endorse said store, or the products and services provided therein, has not authorized Defendants to use the Pearle Vision Marks to identify the terminated franchise facility, products, or services, and has protested against such use.

56.     By virtue of the termination of the Franchise Agreement, Pearle Vision is unable to control the nature and quality of the goods and services that Defendants provide at the Store.

57.     Pearle Vision will suffer serious, immediate, and irreparable harm if Defendants' willful infringement of the Pearle Vision Marks is not immediately enjoined.  Pearle Vision's goodwill and reputation will suffer drastically by virtue of the public's identification of Pearle Vision with the management and operation of the Store.  Pearle Vision monitors and enforces strict quality control over every phase in the marketing of Pearle Vision's products and services, from manufacture to the supervision of and the maintenance of strict standards as to quality and service.  The carefully nurtured image which Pearle Vision now enjoys will be irretrievably injured by any association with the Store, which no longer are subject to Pearle Vision's control and supervision.

58.     Defendants' sale of products and services under the Pearle Vision Marks at the Store poses an immediate threat to the distinct, exclusive image Pearle Vision has created at great expense for its franchisees.  Pearle Vision stores, services, and products are known by the Pearle Vision Marks which are emblematic of their distinctive source.  Pearle Vision stores enjoy a special appeal to consumers which will be harmed by the existence of an infringing store selling non-genuine products and services bearing the distinctive Pearle Vision Marks.  The intangible, but commercially indispensable, value that the Pearle Vision locations now enjoy will be severely undermined by the operation of the Store.

59.     Consumer confusion as to the source or sponsorship of stores bearing the Pearle Vision Marks will be attended not only by an inevitable loss of product distinctiveness, image, and goodwill, but will also cause a diversion of sales from Pearle Vision.  The economic injury to Pearle Vision resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

### COUNT I – LANHAM ACT INFRINGEMENT
### (AGAINST VISION PLUS AND BROOKS)

60.     Pearle Vision re-alleges Paragraphs 1 through 59 above as if fully set forth herein.

61.     Defendants' acts at the Store constitute infringement of Pearle Vision's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

62.     As a result of Defendants' violations, Pearle Vision is entitled to preliminary and permanent injunctive relief, as well as monetary relief pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, including, but not limited to, royalties derived from Defendants' sales following the termination of their Franchise Agreement, damages sustained by Pearle Vision, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

14

## COUNT II – LANHAM ACT FALSE DESIGNATIONS
### (AGAINST VISION PLUS AND BROOKS)

63.    Pearle Vision re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

64.    Defendants' acts at the Store constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.    As a result of Defendants' violations, Pearle Vision is entitled to preliminary and permanent injunctive relief, as well as monetary relief pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, including, but not limited to, royalties derived from Defendants' sales following the termination of their Franchise Agreement, damages sustained by Pearle Vision, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT
### (AGAINST VISION PLUS AND BROOKS)

66.    Pearle Vision re-alleges Paragraphs 1 through 65 above as if fully set forth herein.

67.    Defendants' acts at the Store constitute unlawful trademark and service mark infringements under the common law.

68.    As a result of Defendants' violations, Pearle Vision is entitled to preliminary and permanent injunctive relief, as well as monetary relief, including, but not limited to, royalties derived from Defendants' sales following the termination of their Franchise Agreement, damages sustained by Pearle Vision, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

## COUNT IV – COMMON LAW UNFAIR COMPETITION
### (AGAINST VISION PLUS AND BROOKS)

69.    Pearle Vision re-alleges Paragraphs 1 through 68 above as if fully set forth herein.

70.    Defendants' acts at the Store constitute unfair competition under the common law.

71.     As a result of Defendants' violations, Pearle Vision is entitled to preliminary and permanent injunctive relief, as well as monetary relief, including, but not limited to, royalties derived from Defendants' sales following the termination of their Franchise Agreement, damages sustained by Pearle Vision, the costs of this action, treble damages, and reasonable attorneys' fees incurred herein.

### COUNT V – BREACH OF FRANCHISE AGREEMENT
### (AGAINST VISION PLUS AND BROKS)

72.     Pearle Vision re-alleges Paragraphs 1 through 71 above as if fully set forth herein.

73.     Defendants have not paid when due amounts owed to Pearle Vision for royalties, advertising fees, and merchandise ordered and received under the Franchise Agreement.

74.     Pearle Vision has made demands for payment of these past due receivables.

75.     Defendants' failure to pay Pearle Vision as obligated constitutes a breach of the Franchise Agreement.

76.     This breach has directly and proximately caused loss and damage to Pearle Vision.

### COUNT VI – BREACH OF FRANCHISE AGREEMENT
### (AGAINST VISION PLUS AND BROOKS)

77.     Pearle Vision re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

78.     Defendants' continued operation of the Store after proper termination of the Franchise Agreement and refusal to comply with their post-termination obligations and covenants under Paragraphs 19 and 14.2 constitute a breach of the Franchise Agreement.

79.     This breach has directly and proximately caused loss and damage to Pearle Vision.

80.     Additionally, pursuant to Paragraph 14.6 of the Franchise Agreement, Defendants have already agreed that such breach would result in immediate and irreparable injury to Pearle Vision for which no adequate remedy would exist, and they further consented to the entry of an injunction compelling their compliance with those obligations.

## COUNT VII – BREACH OF NON-COMPETE AGREEMENT
### (AGAINST BROOKS)

81.     Pearle Vision re-alleges Paragraphs 1 through 80 above as if fully set forth herein.

82.     Brooks' continued operation of the Store after proper termination of the Franchise Agreement constitutes a breach of the Non-Compete Agreement.

83.     This breach has directly and proximately caused loss and damage to Pearle Vision.

84.     Additionally, pursuant to the terms of the Non-Compete Agreement, Brooks has already agreed that such breach would result in immediate and irreparable injury to Pearle Vision for which no adequate remedy would exist, and he further consented to the entry of an injunction compelling his compliance with those obligations.

## COUNT VIII – BREACH OF GUARANTY
### (AGAINST BROOKS)

85.     Pearle Vision re-alleges Paragraphs 1 through 84 above as if fully set forth herein.

86.     Pursuant to the Guaranty, Brooks unconditionally and irrevocably guaranteed each and every financial and performance obligation of Vision Plus to Pearle Vision under the Franchise Agreement.

87.     The failure of Brooks to pay to Pearle Vision the amounts due by Vision Plus under the Franchise Agreement, and to otherwise ensure compliance with the obligations thereunder, constitutes a breach of the Guaranty.

88.     This breach has directly and proximately caused loss and damage to Pearle Vision.

**COUNT IX – UNJUST ENRICHMENT**
**(AGAINST VISION PLUS AND BROOKS)**

89.     Pearle Vision re-alleges Paragraphs 1 through 88 above as if fully set forth herein.

90.     Pearle Vision conferred a benefit upon Defendants by allowing them to use and display the Pearle Vision System and the Pearle Vision Marks in connection with their operation of the Store, and by providing various other benefits under the parties' agreements.

91.     Defendants retained the benefits without compensating Pearle Vision for royalties, advertising fees, and merchandise ordered and received, where compensation was agreed upon and would be reasonably expected and under circumstances where it would be inequitable for Defendants to retain such benefits without payment to Pearle Vision.

92.     Defendants further continued to retain these benefits following the termination of their Franchise Agreement without compensating Pearle Vision for any royalties derived from their post-termination sales, where compensation would be reasonably expected and under circumstances where it would be inequitable for Defendants to retain such benefits without payment to Pearle Vision.

93.     At all times, Defendants had knowledge of these benefits conferred upon them by Pearle Vision.

94.     Defendants have been unjustly enriched by, and should therefore compensate, Pearle Vision for past due amounts for royalties, advertising fees, and merchandise ordered and received, as well as for royalties derived from their post-termination sales.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

The agreements at issue in this case provide that the prevailing party is entitled to its attorneys' fees and costs.  In accordance with those provisions, Pearle Vision hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to the prosecution of this action.

**WHEREFORE,** Pearle Vision demands judgment against Defendants as follows:

A.     For preliminary and permanent injunctions enjoining Defendants, and all persons acting on their behalf, in concert with them, or under their control, from:

>    (1)     manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Pearle Vision Marks, or any colorable imitation thereof, at the Store;

>    (2)     displaying or using any of the Pearle Vision Marks to advertise or promote the sale of, or to identify, the Store, or any product or service provided therein; and

>    (3)     making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Store, and the products and services provided therein, are

in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Pearle Vision.

B.     For preliminary and permanent injunctions directing Defendants, and all persons acting on their behalf, in concert with them, or under their control, to:

(1)     recall and deliver up to Pearle Vision or destroy all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the Pearle Vision Marks, or any colorable imitation of the Pearle Vision Marks;

(2)     recall and deliver up to Pearle Vision all copies and editions of the Manual that is in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing store operating instructions, store business practices, or plans of Pearle Vision;

(3)     allow Pearle Vision, at a reasonable time, to enter the premises of the Store and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from their appearance as PEARLE VISION® stores; and

(4)     account and pay over to Pearle Vision all gains, profits, and advantages derived by Defendants from their trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117, and by the controlling principles of common law.

C.      For money damages, plus three times additional actual damages Pearle Vision has sustained by reason of Defendants' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

D.      For punitive damages because of the willful nature of Defendants' actions;

E.      For pre-judgment interest and Pearle Vision's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreement and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

F.      For an order directing Defendants to file with the Court, and to serve on Pearle Vision's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

G.      For an order enjoining Defendants from engaging in any other business which produces, manufactures, distributes, offers or sells optical products, or products or services related thereto which are similar in any material respect to the Store, within a three-mile radius of the Store for a period of one year period;

H.      For compensatory damages, attorneys' fees, and costs against Defendants as a result of their breaches of the Franchise Agreement, the Guaranty, and the Non-Compete Agreement;

I.      For all costs, disbursements, and expenses of this action; and

J.      For all such other relief as this Court may deem just and proper.

*/s/ Grant S. Cowan*_____
Grant S. Cowan (0029667)
Ali Razzaghi (0080927)
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6800
(513) 651-6981 (fax)
E-mails:  arazzaghi@fbtlaw.com
         gcowan@fbtlaw.com

*Trial Attorneys for Plaintiff,*
*Luxottica Retail North America Inc. d/b/a*
*Pearle Vision*

## VERIFICATION OF COMPLAINT

STATE OF _Puerto Rico_          )

COUNTY OF _San Juan_          )     SS:

I, Magda Nogueras, O.D., being duly cautioned and sworn, state that I am currently the Regional Vice President of Luxottica Retail North America Inc. d/b/a PEARLE VISION®, successor-in-interest to Pearle Franchise Corporation and Pearle Vision, Inc. (collectively, "Pearle Vision"), for the former PEARLE VISION® Store #8291 in Denton, Texas, owned and operated by Vision Plus, Inc. and Robert Brooks. I am authorized to act as an agent of Pearle Vision for the purpose of verifying the Complaint herein in accordance with Rule 65 of the Federal Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Pearle Vision to state that Pearle Vision is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

_Magda Nogueras_
Magda Nogueras, O.D.

Affidavit -5598-

Subscribed and sworn to before me, a Notary Public, on this 2 day of May 2011.

_____
Notary Public

CINLibrary 0108316 058 009 1276702v2

23